**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Dominguez, individually and on behalf of S.D., a minor child,<br><br>        Plaintiffs,<br><br>vs.<br><br>Andrew Shaw; Kreg Klein; Alfonso Flores; Johnathon Conn; City of Phoenix; Unknown Denny,<br><br>        Defendants. | CV 10-01173-PHX-FJM<br><br>**ORDER** |

The court has before it defendants' second motion for partial summary judgment (doc. 66), plaintiffs' response (doc. 69), and defendants' reply (doc. 70). In addition to filing a supplemental statement of facts (doc. 67), defendants incorporate their statement of facts filed in support of the first motion for partial summary judgment (doc. 29).

**I. Background**

This action arises out of plaintiffs' arrests by the defendant officers. For the purposes of this motion we consider undisputed facts as true and review disputed facts in the light most favorable to the non-moving party. Anthoine v. N. Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010). Our order addressing defendants' first motion for partial summary judgment detailed the circumstances leading up to Margaret Dominguez and her minor son

1  S.D.'s arrests by defendants (doc. 65).  We review the facts relevant to the instant motion.

2        S.D. and his friend J.M. were waiting for a ride home from Margaret on May 4, 2009, 3 when they observed Phoenix police arresting J.M.'s brother.  J.M. became agitated, and the 4 police told the boys to leave the scene.  In the meantime, Margaret arrived in her car.  S.D. 5 and J.M. entered the car.  According to defendants, Margaret pushed Officer Klein out of the 6 way and stepped inside the car.  DSOF ¶ 20 (doc. 29).  Margaret denies pushing Officer 7 Klein.  Pls.' Summary of Disputed Facts ("PSODF") ¶ 17 (doc. 68).  Officer Klein removed 8 Margaret from her car.

9        Upon witnessing this exchange, S.D. became upset.  He got out of the passenger door 10 and walked quickly to the back of the car.  Defendants claim that S.D. swung his fists and 11 hit Officer Denny, who was trying to prevent S.D. from reaching the back of the car.  DSOF 12 ¶ 25 (doc. 29).  Officer Denny responded by executing a defensive "sprawl move," which 13 tackled S.D. to the ground.  Id. at ¶¶ 28-29.  S.D. denies swinging his fists at or grabbing 14 Officer Denny.  PSODF ¶¶ 20, 23, 24.  According to S.D., he was "violently slammed" onto 15 the ground by Officers Denny and Conn as he reached the back of the car.  PSOF ¶ 9. 16 Officers Denny, Conn, and Flores worked together to try and place S.D. in handcuffs. 17 Another minor at the scene, S.W., grabbed Officer Denny's vest and tried to pull him 18 backwards.  In response, Officer Flores pulled S.W. away.  S.W. struck Officer Flores in the 19 face.  Officer Flores left S.D. and Officers Conn and Denny to arrest S.W.

20        During S.D.'s arrest, he was struck by Officer Denny.  Officer Conn had his knee on 21 S.D.'s back.  It took the officers approximately ten seconds to place both handcuffs on S.D.'s 22 wrists.  According to S.D., Officer Conn kept his knee on S.D.'s back even after S.D. was 23 handcuffed, while Officer Denny struck him several times on his head and face.  PSOF ¶ 11. 24 S.D. claims that Officer Denny then forced his face into the gravel, grinding it back and 25 forth.  Id. ¶ 12.  Although defendants acknowledge that S.D. sustained facial abrasions, they 26 deny using any force on S.D. after he was handcuffed.  DSOF ¶ 45.  S.D. contends that 27 Officer Flores failed to intervene to prevent Officer Denny's use of force.  PSOF ¶ 13.

28        In 2010, S.D. was adjudicated delinquent by the Superior Court of Arizona in

Maricopa County for the offenses of resisting arrest in violation of A.R.S. § 13-2508 and threatening and intimidating Officer Klein in violation of A.R.S. § 13-1202. DSOF, Ex. A at 4. The adjudication has not been reversed, appealed, or set aside.

Plaintiffs assert claims for (1) assault and battery, (2) false imprisonment, (3) negligence, and (4) excessive force and false imprisonment pursuant to 42 U.S.C. § 1983. On September 30, 2011, we granted in part defendants' motion for partial summary judgment relating to S.D.'s § 1983 claims (doc. 65). Defendants now move for partial summary judgment on the following: (1) S.D.'s claim for assault and battery (count one); (2) S.D.'s claim for false imprisonment (count two); (3) S.D. and Margaret's claims for negligence (count three); and (4) S.D.'s claims that Officers Denny, Conn, and Flores acted in concert to accomplish assault and battery and false imprisonment, and Margaret's claims that Officers Shaw and Klein acted in concert to accomplish assault and battery and false imprisonment. Compl. ¶¶ 22, 23, 29, 30, 38, 39 (doc. 25).

## II. Liability of Police Officers for Negligence

Defendants argue that Arizona police officers cannot be liable for simple negligence when taking discretionary action in the course of their official duties. The Arizona legislature has taken a different view. When enacting the Actions Against Public Entities or Public Employees Act in 1984 (codified at A.R.S. §§ 12-820 to 12-823), the legislature affirmed the settled notion that governmental immunity from tort liability "is the exception and liability the rule." City of Tucson v. Fahringer, 164 Ariz. 599, 600 n.4, 795 P.2d 819, 820 (1990). See also Backus v. State, 220 Ariz. 101, 104, 203 P.3d 499, 502 (2009) (noting the "overarching policy" in Arizona of "holding a public entity responsible for its conduct"). The Arizona Supreme Court explicitly recognized the legislature's constitutional authority to direct the manner in which actions may be brought against the state. Clouse ex rel. Clouse v. State, 199 Ariz. 196, 203, 16 P.3d 757, 764 (2001). Clouse held that the Arizona Constitution permits the legislature to "define those instances in which public entities and employees are entitled to immunity." Id. The legislature acted within this authority when it adopted A.R.S. § 12-820.02.A, which outlines when a public employee receives qualified

immunity. Id. Clouse noted that the "specific statutory grant" of immunity afforded public employees was a decision "for the legislature, not for the court." Id.

Defendants argue that because A.R.S. § 12-820.02 does not address police use of force, statutory direction is lacking and we must follow Clouse's instruction to apply common law principles of immunity. See id. (describing cases where the court applied common law principles "in the absence of any statutory direction"). Defendants cite Landeros v. City of Tucson, 171 Ariz. 474, 831 P.2d 850 (Ct. App. 1992), in support of their argument that common law principles prevent police officers from facing liability for simple negligence. Even if defendants are correct in their assessment of Arizona negligence law (which we reject), Landeros is distinguishable. Landeros held that police officers cannot be liable for simple negligence for their role in crime investigation. Id. at 475, 831 P.2d at 851. This conclusion was based on the public's "vital stake" in vigorous crime investigation, which may be hampered if officers faced liability for simple negligence. Id. (citation omitted). But this case deals not with alleged negligence in an investigation, but with alleged negligence in use of physical force against Arizona citizens. The public has an interest in ensuring that police officers do not use more force than is justified against their citizens, even if excessive force is applied as the result of a mistake in judgment. We do not find Landeros controlling here.

Arizona's legislature expressly determined that public entities and officials acting within the scope of their employment are not liable for the actions detailed in A.R.S. § 12-820.02(A) unless the conduct was intentional or grossly negligent. The enumerated actions in A.R.S. § 12-820.02(A) do not include a public employee's use of force. The legislature did not elect to place use of force into the narrow exceptions granting qualified immunity, and it is not our place to override this decision. See Clouse, 199 Ariz. at 203, 16 P.3d at 764. Defendants are not entitled to summary judgment on plaintiffs' negligence claims simply because they are police officers.

### III. Application of Heck to S.D.'s State Law Claims

Our September 30, 2011 order addressed the application of Heck to S.D.'s juvenile delinquency adjudication. See Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

- 4 -

1    Heck demands dismissal of a § 1983 damages action if a plaintiff's criminal conviction arises
2    out of the same facts as his § 1983 claim, "is fundamentally inconsistent with the unlawful
3    behavior" for which damages are requested, and his conviction has not been expunged or
4    otherwise vacated. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996). We concluded that
5    Heck was applicable to S.D.'s juvenile delinquency adjudication for resisting arrest. Order
6    at 4-5. On that basis, we granted summary judgment to defendants on S.D.'s § 1983 false
7    imprisonment claim in its entirety, and on S.D.'s § 1983 excessive force claim with respect
8    to force allegedly inflicted on S.D. prior to being placed in handcuffs. However, we denied
9    summary judgment on the excessive force claim because disputed facts remain as to whether
10   defendants used force on S.D. after he was handcuffed.[1]

11   Defendants now move for summary judgment on S.D.'s state law claims, arguing that
12   Heck similarly operates to bar S.D.'s state law false imprisonment claim in its entirety, and
13   bars S.D.'s assault, battery, and negligence claims up until the time that S.D. was handcuffed.
14   Plaintiffs argue that Arizona state courts have not applied Heck to state law claims and that
15   we should not be the first to do so. According to plaintiffs, Heck's specific references to §
16   1983 claims shows that the Supreme Court does not intend its holding to apply to state
17   claims. In holding that § 1983 damages actions are barred when success on these claims
18   would necessarily invalidate a valid criminal conviction, Heck applied the principle that
19   common law tort actions are inappropriate methods to challenge the validity of criminal
20   convictions. Heck, 512 U.S. at 486, 114 S. Ct. at 2372. Heck explicitly relied on principles
21   of state tort law in supporting its conclusion. Preventing collateral attacks on criminal
22   convictions via § 1983 claims addressed the Supreme Court's "long expressed [] concerns for
23   finality and consistency." Id. at 484-85, 114 S. Ct. at 2371.

24   The Arizona Supreme Court discussed concerns for "finality and respect for
25   judgments," similar to those raised in Heck, in holding that a state law claim for legal

---

[1] S.D. clarified in his response to the first motion for partial summary judgment that he did not mean to assert claims in count four against Officers Shaw and Klein. Accordingly, we dismissed S.D.'s § 1983 claims against Officers Shaw and Klein. Order at 3.

- 5 -

1 malpractice arising during criminal proceedings does not accrue until the criminal matter has
2 been terminated in the defendant's favor. See Glaze v. Larsen, 207 Ariz. 26, 32-35, 83 P.3d
3 26, 32-35 (2004). Applying Heck to S.D.'s state law claims will similarly promote finality
4 and respect for Arizona's adjudication of S.D.'s delinquency. Otherwise, we would bar S.D.
5 from seeking money damages under federal law yet allow him to seek money damages for
6 the same conduct under state law. This is nonsensical. Allowing a plaintiff to attack the
7 validity of his state criminal adjudication using state tort law would undermine Arizona's
8 interest in promoting respect for and finality of state court judgments.

Thus, we proceed with evaluating S.D.'s state law claims for false imprisonment,
assault and battery, and negligence under Heck.[2] If success on these claims would
necessarily undermine S.D.'s juvenile adjudication, the claims have not yet accrued and are
barred.

### IV. S.D.'s False Imprisonment Claim

False imprisonment is "the detention of a person without his consent and without
lawful authority." Cullison v. City of Peoria, 120 Ariz. 165, 169, 584 P.2d 1156, 1160
(1978). As such, a plaintiff challenging his arrest via a false imprisonment claim must
establish its unlawfulness. Defendants argue that S.D. cannot show that his arrest lacked
probable cause without necessarily invalidating his adjudication of delinquency for resisting
arrest. Plaintiffs do not dispute this contention, and we agree that a finding that S.D.'s arrest
was unlawful would necessarily invalidate the adjudication of delinquency that stemmed
from that arrest. Summary judgment is granted to defendants on S.D.'s false imprisonment
claim.

### V. S.D.'s Assault and Battery Claim

To recover for battery, plaintiff must provide that defendants "intentionally engage[d]
in an act that result[ed] in harmful or offensive contact" with the plaintiff. Duncan v.

---

[2] We refer to Heck, but, of course, we realize that the application of the principle underlying Heck to state claims is an issue arising under state, not federal, law.

- 6 -

1  Scottsdale Med. Imaging, Ltd., 205 Ariz. 306, 309, 70 P.3d 435, 438 (2003). Assault
2  requires proof that defendants acted with intent to cause a harmful or offensive contact. See
3  Restatement (Second) of Torts § 21 (1965). As we explained in our September 30, 2011
4  order, a person can only be found guilty of resisting arrest in Arizona if the arresting officer
5  acted lawfully, because a person cannot justifiably resist arrest unless an officer's use of force
6  is unlawful. See A.R.S. § 13-2508(A), id. § 13-404(B)(2); State v. Fontes, 195 Ariz. 229,
7  232, 986 P.2d 897, 900 (Ct. App. 1998); Order at 5-6. Here, the parties agree that defendants
8  used force to place S.D. in handcuffs. The juvenile court found that S.D. struggled until he
9  was placed into handcuffs, which led to a finding that S.D. was delinquent for resisting
10 arrest. DSOF, ex. A at 3-4. And it is undisputed that S.D.'s juvenile adjudication has not
11 been reversed or otherwise set aside. Thus, any claim that defendants committed an assault
12 or battery on S.D. prior to him being placed in handcuffs would invalidate his adjudication
13 of delinquency and is barred by Heck.

14       S.D. claims that defendants continued to strike him and ground his face into the gravel
15 even after he was handcuffed. Defendants deny these allegations. A dispute of material fact
16 remains as to whether force was used on S.D. after this point. We therefore grant summary
17 judgment to defendants on S.D.'s assault and battery claim up to the point he was handcuffed,
18 but deny summary judgment with respect to S.D.'s allegations of assault and battery after he
19 was handcuffed.

20       **VI. S.D.'s Negligence Claim**

21       To prove negligence under Arizona law, a plaintiff must show (1) a duty that required
22 defendant to conform to a particular standard of care, (2) defendant's breach of that duty, (3)
23 a "causal connection between" breach and injury, and (4) actual damage. Gipson v. Kasey,
24 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). S.D. alleges that the "excessive nature" of
25 defendants' conduct in arresting S.D. and the failure of defendants to intervene in each others'
26 "unlawful, excessive, abusive conduct" amounts to negligence. Compl. at 6. S.D. alleges
27 that the City of Phoenix is liable under *respondeat superior*. Id.

28       Plaintiffs argue that a finding of negligence in this case would not be inconsistent with

- 7 -

1 the elements of resisting arrest. But as explained above, a finding that S.D. resisted arrest
2 equates to a finding that the officers acted lawfully in making the arrest. Thus, any finding
3 that defendants' conduct in arresting S.D. was negligent would invalidate the juvenile court's
4 finding that S.D. resisted arrest. Similarly, an officer's failure to intervene in an arrest cannot
5 be negligent if the arrest was lawful. Accordingly, Heck bars S.D.'s negligence claim up
6 until the point that he was placed in handcuffs. A jury could find, however, that defendants
7 were negligent in either inflicting force on S.D. after he was handcuffed or by failing to
8 intervene to prevent the post-arrest use of force. We thus grant summary judgment to
9 defendants on S.D.'s negligence claim up to the point he was handcuffed, but deny summary
10 judgment to defendants with respect to defendants' alleged conduct after S.D. was
11 handcuffed.

## VII. Plaintiffs' Claims That Defendants Were Acting in Concert

13 Finally, we address plaintiffs' "acting in concert" claims. Specifically, Margaret
14 alleges that Officers Klein and Shaw acted in concert when they committed assault and
15 battery and falsely imprisoned her. S.D. alleges that Officers Denny, Conn, and Flores acted
16 in concert when they committed assault and battery on him.[3] Joint and several liability no
17 longer exists in Arizona unless a statutory exception applies. A.R.S. § 12-2506(A). One
18 such exception is when both defendants were "acting in concert" to commit an intentional
19 tort. Id. §§ 12-2506(D)(1); 12-2506(F)(1). Defendants act in concert when they "enter[] into
20 a conscious agreement to pursue a common plan or design to commit an intentional tort and
21 actively tak[e] part in that intentional tort." Id. § 12-2506(F)(1). Defendants argue that there
22 is no evidence that the officers were acting in concert. Plaintiffs contend that sufficient
23 evidence exists. "[T]here is no issue for trial unless there is sufficient evidence favoring the
24 nonmoving party for a jury to return a verdict for that party. If the evidence is merely
25 colorable, or is not significantly probative, summary judgment may be granted." Anderson

---

[3] S.D. also alleged in the amended complaint that the officers acted in concert when they falsely imprisoned him. Because we already granted summary judgment to defendants on S.D.'s false imprisonment claim, we do not address this argument.

- 8 -

1  v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (internal citations
2  omitted).

3        We first address Margaret's allegations regarding Officers Klein and Shaw. "[A] party
4  opposing a properly supported motion for summary judgment may not rest upon mere
5  allegation or denials of his pleading, but must set forth specific facts showing that there is
6  a genuine issue for trial." Id. at 256, 106 S. Ct. at 2514. When a non-moving party fails to
7  properly support an assertion of fact, we may grant summary judgment if it is warranted.
8  Fed. R. Civ. P. 56(e)(3). Here, despite plaintiffs' assertions in their response to the instant
9  motion that Officers Klein and Shaw "worked together to physically arrest" Margaret,
10 Response at 12, plaintiffs point to no evidence in the record that Officer Shaw assisted
11 Officer Klein in any aspect of Margaret's arrest. Indeed, Officer Shaw is not even mentioned
12 in plaintiffs' statement of facts, other than to confirm that S.D. did not intend to assert claims
13 against him. Plaintiffs have not shown that there is a genuine issue of fact as to whether
14 Officers Shaw and Klein acted in concert to commit assault and battery or falsely imprison
15 Margaret Dominguez. Accordingly, we grant summary judgment to Officers Klein and Shaw
16 on Margaret's claims that they acted in concert.

17       S.D. alleges that Officers Denny, Conn, and Flores acted in concert to commit assault
18 and battery on S.D. In order for Officers Denny, Conn, and Flores to be held jointly and
19 severally liable, plaintiffs must show that each officer (1) entered into a conscious agreement
20 to commit assault and battery on S.D. and (2) actively participated in the assault and battery.
21 See A.R.S. § 12-2506(F)(1). A conscious agreement to commit a tort may be implied from
22 the alleged tortious conduct itself; evidence of a verbal agreement is not necessary. Chappell
23 v. Wenholz, 226 Ariz. 309, ¶ 12, 247 P.3d 192, 195 (Ct. App. 2011). Chappell held that a
24 jury could find that defendants consciously agreed to commit battery on the plaintiff "by
25 collectively joining in the fight in full sight of each other." Id. Here, it is undisputed that
26 Officers Denny and Conn worked together to arrest S.D. Plaintiffs contend that both Officers
27 Denny and Conn used physical force on S.D. after he was handcuffed, PSODF ¶ 29, while
28 defendants deny the use of physical force after this point. DSOF ¶ 45. A jury could find that

1    Officers Denny and Conn consciously agreed to commit assault and battery by each using
2    force on S.D. while in sight of each other. And a jury could also find that each officer
3    actively participated in the tort by using force. Contrary to defendants' argument, there is
4    sufficient evidence to support a jury's finding that Officers Denny and Conn acted in concert
5    to commit assault and battery on S.D.

6    We do not reach the same conclusion with respect to Officer Flores. Both parties
7    agree that Officer Flores went to assist Officers Denny and Conn with S.D.'s arrest. It is
8    undisputed that at this time, another minor at the scene, S.W., struck Officer Flores in the
9    face. He then left S.D. and Officers Denny and Conn to arrest S.W.  Plaintiffs argue that
10   Officer Flores intended to assist Officers Denny and Conn in their use of force and failed to
11   intervene to prevent their use of force. PSOF ¶ 13. Because Heck bars S.D.'s assault and
12   battery claim up until the point that S.D. was completely handcuffed, Officer Flores's role
13   in anything that occurred prior to this point is immaterial to this motion. Instead, the relevant
14   time period is the time after S.D. was handcuffed. Even if we were to conclude that a jury
15   could reasonably infer that Officer Flores consciously agreed to commit an assault and
16   battery on S.D. after he was handcuffed because of his prior involvement in the attempt to
17   handcuff S.D., we cannot conclude that there is sufficient evidence for a jury to conclude that
18   Officer Flores actively participated in an assault and battery after S.D. was handcuffed.
19   Plaintiffs do not allege that Officer Flores had physical contact with S.D. after he was
20   handcuffed. And we do not agree that a failure to intervene in this case constitutes active
21   participation. Plaintiffs have offered no evidence suggesting that Officer Flores either knew
22   that the officers would continue to assault S.D. after the arrest was complete or witnessed any
23   use of force post-handcuffs. Indeed, the undisputed facts suggest that Officer Flores had no
24   further involvement with S.D. after he left to pursue S.W., an exit that occurred prior to the
25   successful handcuffing of S.D.

26   In sum, plaintiffs have not presented evidence creating a genuine issue of material fact
27   as to Officer Flores' participation in the alleged assault and battery on S.D. We therefore
28   grant summary judgment to defendants on S.D.'s claims that Officer Flores acted in concert,

but deny summary judgment to defendants on S.D.'s claims that Officer Denny and Officer Conn acted in concert to commit assault and battery.

## VIII. Conclusion

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion for partial summary judgment (doc. 66).

**IT IS ORDERED GRANTING** summary judgment for defendants on S.D.'s false imprisonment claim in count two.

**IT IS ORDERED GRANTING** summary judgment for defendants on S.D.'s assault, battery, and negligence claims in counts one and three up to the point that S.D. was handcuffed.

**IT IS ORDERED DENYING** summary judgment to defendants on S.D.'s assault, battery, and negligence claims in count one and three with respect to force allegedly inflicted on S.D. after he was handcuffed.

**IT IS ORDERED DENYING** summary judgment to defendants on Margaret Dominguez's negligence claim in count three.

**IT IS ORDERED GRANTING** summary judgment to defendants on Margaret Dominguez's claims that Officers Klein and Shaw acted in concert pursuant to A.R.S. § 12-2506(D)(1).

**IT IS ORDERED GRANTING** summary judgment to defendants on S.D.'s claims that Officer Flores acted in concert pursuant to A.R.S. § 12-2506(D)(1).

**IT IS ORDERED DENYING** summary judgment to defendants on S.D.'s claims that Officers Denny and Conn acted in concert pursuant to A.R.S. § 12-2506(D)(1).

This leaves the following claims against the following parties for trial:

Margaret Dominguez's claim for assault and battery (count one) against Klein and Shaw (severally, but not joint) and against the City of Phoenix;

Margaret Dominguez's claim for false imprisonment (count two) against Klein and Shaw (severally, but not joint) and against the City of Phoenix;

Margaret Dominguez's claim for negligence (count three) against all defendants;

1  Margaret Dominguez's § 1983 claims (count four) against Klein and Shaw;

2  S.D.'s claim for assault and battery (count one) for conduct occurring after he was
3  handcuffed against Denny and Conn (jointly and severally), against Flores (severally, but not
4  joint), and against the City of Phoenix;

5  S.D.'s claim for negligence (count three) for conduct occurring after he was
6  handcuffed against all defendants;

7  S.D.'s § 1983 excessive force claim (count four) for conduct occurring after he was
8  handcuffed against Denny, Conn, and Flores.

9  DATED this 15th day of December, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge